UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AIRBUS S.A.S, a *société par action simplifiée* organized under the laws of France , )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AVIATION PARTNERS, INC., a Washington corporation, )<br>)<br>Defendant. )<br>) | No. 2:12-cv-01228-JLR<br><br>**ANSWER AND COUNTERCLAIM FOR INJUNCTIVE RELIEF** |

Defendant Aviation Partners, Inc. ("API"), answers the Complaint of Plaintiff Airbus S.A.S. ("Airbus") as follows:

### I.    NATURE OF THE ACTION

1. Answering paragraph 1 of the Complaint, API admits that Airbus's Complaint purports to seek a declaratory judgment of invalidity and noninfringement of United States Patent No. 5,348,253 ("the '253 Patent"), but avers that no such declaration is appropriate. Except as specifically admitted, API denies the remaining allegations of paragraph 1 of the Complaint.

### II.    THE PARTIES

2. API lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 2 of the Complaint and therefore denies the same.

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE RELIEF- 1
Case No2:12-CV-01228
115940.0029/5450589.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

3. API admits the allegations of Paragraph 3 of the Complaint.

### III.   JURISDICTION AND VENUE

4. Answering paragraph 4 of the Complaint, API admits that this Court has subject matter jurisdiction over this action and that the controversy before the Court concerns the validity and infringement of the '253 Patent. Except as specifically admitted, API denies the remaining allegations set forth in paragraph 4 of the Complaint.

5. Answering paragraph 5 of the Complaint, API admits that this Court has personal jurisdiction over API. API admits that it conducts business in Texas and that it sells and ships products to Texas. Except as specifically admitted, API denies the remaining allegations set forth in paragraph 5 of the Complaint.

6. Answering paragraph 6 of the Complaint, API denies that venue was appropriate in Texas, but admits that venue is appropriate in the Western District of Washington.

### IV.   FACTS GIVING RISE TO THIS ACTION

7. Answering paragraph 7 of the Complaint, API admits that Airbus manufactures and sells aircraft. API lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 7 of the complaint and therefore denies the same.

8. Answering paragraph 8 of the Complaint, API admits that the records at the United States Patent and Trademark Office ("USPTO") list API as the owner of the '253 Patent and that the '253 Patent is titled "Blended Winglet." API affirmatively asserts that it has an interest in the '253 Patent, as do other parties whose identities are known to Airbus. Further answering paragraph 8 of the Complaint, API admits that the patent application that issued as the '253 Patent was filed on February 1, 1993, and that the USPTO duly and lawfully issued the '253 Patent on September 20, 1994. API further admits that Dr. Louis Gratzer is the only inventor of the invention disclosed and claimed in the '253 Patent, and that

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE
RELIEF- 2
Case No2:12-CV-01228
115940.0029/5450589.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1  Dr. Gratzer assigned the '253 Patent to API on December 6, 1995. API also admits that what
2  purports to be a copy of the '253 Patent is attached to the Complaint as Exhibit A. Except as
3  specifically admitted, API denies the remaining allegations set forth in paragraph 8 of the
4  Complaint.

5      9. Answering paragraph 9 of the Complaint, API admits that it has had written
6  and oral communications with Airbus concerning the '253 Patent. API further admits that a
7  memorandum dated August 12, 2012, which analyzed Airbus's technical information,
8  concluded that claims of the '253 Patent appears to read on the Airbus Sharklet winglet.
9  Except as specifically admitted, API denies the remaining allegations set forth in paragraph 9
10 of the Complaint.

11     10. Answering paragraph 10 of the Complaint, API denies that it directly asserted
12 that Airbus infringed the '253 Patent and that any alleged threats are a significant hindrance to
13 Airbus. Except as specifically admitted, API denies the remaining allegations set forth in
14 paragraph 10 of the Complaint.

15            V.     **FIRST CLAIM FOR RELIEF AGAINST API**
16         **(Declaratory Judgment of Invalidity of the '253 Patent)**

17     11. Answering paragraph 11 of the Complaint, API restates and incorporates the
18 admissions, denials, and allegations of Paragraphs 1 through 10 above as if set forth herein.

19     12. API denies the allegations found in paragraph 12 of the Complaint.

20     13. API denies the allegations found in paragraph 13 of the Complaint.

21           VI.    **SECOND FIRST CLAIM FOR RELIEF AGAINST API**
22       **(Declaratory Judgment of Noninfringement of the '253 Patent)**

23     14. Answering paragraph 14 of the Complaint, API restates and incorporates the
24 admissions, denials, and allegations of Paragraphs 1 through 10 above as if set forth herein.

25     15. API denies the allegations found in paragraph 15 of the Complaint.

26     16. API denies the allegations found in paragraph 16 of the Complaint.

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE
RELIEF- 3
Case No2:12-CV-01228
115940.0029/5450589.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

## DEMAND FOR JURY TRIAL

17. API admits that Airbus had demanded a trial by jury on all triable issues.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

### FIRST DEFENSE

1. Airbus's claims are barred, in whole or in part, because the claims, and each purported allegation contained there, fail to state claims for relief upon which relief may be granted.

### SECOND DEFENSE

2. Airbus's claims are barred, in whole or in part, because Airbus failed to join a necessary party pursuant to Fed. R. Civ. P. 19.

### THIRD DEFENSE

3. Airbus's claims are barred, in whole or in part, by the doctrine of unclean hands.

### FOURTH DEFENSE

4. Airbus's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, acquiescence, laches, and/or unjust enrichment.

### FIFTH DEFENSE

5. Airbus's claims are barred, in whole or in part, because Airbus has suffered no compensable injury or actual damages.

### SIXTH DEFENSE

6. API asserts the defenses of good faith and due care.

### SEVENTH DEFENSE

7. API reserves all matters asserted in the prior filed motion to dismiss as additional defenses.

### EIGHTH DEFENSE

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE RELIEF- 4
Case No2:12-CV-01228
115940.0029/5450589.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

8.  API reserves all matters asserted in its Counterclaims (described immediately below) as additional defenses.

API reserves the right to assert additional affirmative defenses as discovery and investigation progress.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant respectfully prays for the following relief:

A    That Airbus's Complaint be dismissed with prejudice;

B.   That judgment should be entered in API's favor and against Airbus;

C.   That the Court find that this case is exceptional within the meaning of 35 U.S.C. §285 and that the Court award API its reasonable attorneys' fees;

D.    That the Court award API its costs; and

E.   That the Court award API all such other relief as to which API may be entitled.

**COUNTERCLAIMS**

This is a case where one of the largest airplane companies in the world has intentionally deceived a small, innovative American company for the purpose of misappropriating the smaller company's trade secrets and technology.  Aviation Partners, Inc. ("API") has discovered that the defendant Airbus S.A.S.'s "Sharklet" winglet was nearly identical to API's Blended Winglet Technology.  To protect its technology, API files its counterclaims, asserting breach of a non-disclosure agreement and violations of the Washington Consumer Protection Act, and seeking injunctive relief and attorneys' fees.  For its Counterclaims, API alleges the following:

**I.    PARTIES**

1.   Plaintiff Aviation Partners Inc. is a Washington corporation having a principal place of business in Seattle, Washington.

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE RELIEF- 5
Case No2:12-CV-01228
115940.0029/5450589.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

2. On information and belief, defendant Airbus S.A.S., ("Airbus") is a *société par action simplifiée* organized under the laws of France, having a principal place of business in Toulouse-Blagnac, France.

3. On information and belief, Airbus regularly and systematically does business with residents in the state of Washington and in this judicial district. In addition, the causes of action alleged in this Counterclaim arose, at least in part, in this judicial district wherein API and Airbus conducted business.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this matter is between API, a resident of Washington state, and Airbus, which is a resident of a foreign country, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. This Court can exercise personal jurisdiction over Airbus because, on information and belief, Airbus regularly and systematically does business in this judicial district, including the business that it conducted with API here.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a)(1), 1391(a)(2), 1391(c), and/or 1391(d).

## III. PERTINENT FACTS

A. *The API "Blended Winglet Technology"*

7. API is a small, innovative company based in Seattle, Washington. It was founded in 1991. The company specializes in the design, development, production, commercialization, and marketing of winglet systems for various commercial and private aircraft. API's core engineering group consists of an experienced team of aerospace professionals who are primarily alumni from Boeing, Lockheed, McDonnell Douglas and Learjet.

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE RELIEF- 6
Case No2:12-CV-01228
115940.0029/5450589.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

8.     API focuses its efforts on creating fuel saving and performance enhancing improvements for a variety of commercial and private aircraft. API has obtained several patents for its development work in fuel saving devices, including United States Patent No. 5,348,253, titled *Blended Winglets* ("the '253 Patent"). The inventor named on the '253 Patent is Dr. Louis B. Gratzer, a former Professor at University of Washington School of Engineering. API's technology (referred throughout this Complaint as "API's Blended Winglet Technology") includes not only the '253 Patent and other patents, but also trade secrets and confidential information developed by API through its years of experience developing, designing, and adapting the API Blended Winglet Technology for use with various aircraft.

9.     When properly designed and implemented, blended winglets are attached to the ends of an airplane's wings to minimize induced drag during operation. Blended winglets can decrease fuel consumption, increase a plane's flight range, and improve a number of other aircraft performance characteristics, including faster climb rates and noise reduction.

10.    API's Blended Winglet Technology was first introduced as a performance enhancement program for the Gulfstream II airplane. This program was highly successful, resulting in an unprecedented range and fuel efficiency improvement in excess of 7% for the Gulfstream II. The vast majority of the Gulfstream II fleet now uses API's Blended Winglet Technology.

11.    In the late-1990s, The Boeing Company adopted API's Blended Winglet Technology for the Boeing Business Jet (a next-generation Boeing 737 series aircraft). In 1999, Boeing and API entered into a joint venture for the purpose of developing API's Blended Winglet Technology for Boeing aircraft. The joint venture was named "Aviation Partners Boeing" and is known as "APB." Over 3,500 sets of blended winglets have been incorporated on numerous models of Boeing aircraft worldwide.

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE RELIEF- 7
Case No2:12-CV-01228
115940.0029/5450589.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

12. A typical 737 aircraft equipped with API's blended winglets saves up to 100,000 gallons of fuel per year. A typical 757 aircraft equipped with API's blended winglets saves up to 300,000 gallons of fuel per year, while a typical 767 aircraft equipped with API's blended winglets saves up to 500,000 gallons of fuel per year.

13. API also offers the API Blended Winglet Technology for other aircraft, such as the Hawker 800/800XP series jet aircraft and models of the Dassault Falcon F2000 series, F-900 series, and it plans on seeking F.A.A. certification of the F-50 series in 2012.

14. Before a design change, such as the addition of a blended winglet to an aircraft, can be implemented, the Federal Aviation Administration ("F.A.A.") must issue a "Supplemental Type Certificate" and the European counterpart of the F.A.A., known as E.A.S.A., must certify the alteration of the aircraft. Using engineering data and information developed by API, the F.A.A. has issued a number of Supplemental Type Certificates, and E.A.S.A. has issued certificates authorizing the installation of the winglets on specific aircraft, such as Boeing, Gulfstream, Hawker, and Dassault aircraft. API and Boeing, through APB, recently sought and obtained certification from the F.A.A. and E.A.S.A. of API's blended winglets for the Boeing 767 series aircraft.

15. The world aviation community has recognized and continues to recognize that API is a world leader in winglet technology. API's Blended Winglet Technology not only saves fuel, helping to protect the environment, but it also modernizes existing aircraft and improves performance. Based on an algorithm, API estimates that use of API's Blended Winglet Technology has already saved over 3 billion gallons of jet fuel and that, by the end of 2014, fuel savings will exceed five billion gallons. The API Blended Winglet Technology currently offered by API was developed from and is based, in part, on the '253 Patent.

B. *API and Its Long-Standing Relationship with Airbus*

16. In 2006, API approached Airbus to determine whether Airbus would be interested in retrofitting Airbus's A320 aircraft with API's blended winglets, to allow

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE
RELIEF- 8
Case No2:12-CV-01228
115940.0029/5450589.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

Airbus's planes to save fuel, extend range, and improve additional performance characteristics of the Airbus A320 family of aircraft.

17. To encourage the exchange of protected and confidential information and data between the parties, API and Airbus entered into a non-disclosure agreement dated September 27, 2006 (the "2006 NDA"). The goal of the exchange was to allow the parties to determine how API's Blended Winglet Technology could be best adapted to Airbus's A320 Family of aircraft. It also provides that neither party shall expressly or implicitly receive from the other any rights to the other's intellectual properties. The term of the 2006 NDA was extended in 2011 and it remains in effect today.

18. The 2006 NDA includes an arbitration provision for contractual disputes, but allows either party to seek an injunction in a court of competent jurisdiction against improper use or disclosure of that party's confidential information.

19. During initial meetings, Airbus executives and engineers stated emphatically that API's Blended Winglet Technology would not work on the A320 in-production (*i.e.*, new) or retrofit aircraft. After the initial meeting in Toulouse, France, API developed robust engineering and aerodynamic packages, to convince Airbus that the API Blended Winglet Technology could be adapted for use on Airbus's airplanes. These engineering and aerodynamic packages were proprietary and confidential to API.

20. On June 28, 2007, API presented its "Aerodynamic and Engineering Proposal" to Airbus's engineering and business personnel in Toulouse, France. API's proposal included detailed structural as well as aerodynamic solutions to allow use of the API Blended Winglet Technology on the A320 aircraft. The majority of information disclosed by API to Airbus during this meeting was confidential and proprietary to API.

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE
RELIEF- 9
Case No2:12-CV-01228

115940.0029/5450589.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

21. After the June 28, 2007 meeting, the parties agreed to continue the study phase of the project. API undertook, at its own expense, to design and produce a flight test set of blended winglets for the Airbus A320 to be flown on Airbus's test aircraft.

22. Airbus told API that Airbus would use the API Blended Winglet Technology on the A320 family of aircraft if the testing demonstrated a certain percentage performance benefit.

23. By January of 2009, a flight test was completed in Toulouse, France. The flight test was conducted on Airbus's A320 flight test aircraft with Airbus and API personnel present. After this test, the parties disagreed as to whether the results met the minimum benchmark performance benefits required by Airbus.

24. About a year later, to address that disagreement, API (at its own expense) performed additional flight tests using a JetBlue A320 aircraft. The test flights took place near San Bernardino, California. The flight tests were conducted in good weather conditions, over water. Pilots and others familiar with the Airbus A320 performance parameters, from both JetBlue and API, conducted these flight tests. API achieved drag reduction far in excess of the minimum benchmark performance benefits specified by Airbus during those tests. Upon completion of the flight test, Airbus acknowledged that the API blended winglets did indeed perform at a superior level.

25. The success of the second series of flight tests resulted in several subsequent meetings between the API and Airbus engineering teams. These meetings took place in Toulouse, France, Farnborough and Filton, England, and Bremen, Germany, in late 2010 and early 2011. The purpose of the meetings was to review the aerodynamic and structural solutions that API had originally proposed to Airbus. API had proven to Airbus, using reliable, robust engineering practices and methodologies, that the API Blended Winglet Technology could in fact be used on both in-production and retrofit A320 aircraft. These engineering practices and methodologies were confidential and proprietary to API.

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE
RELIEF- 10
Case No2:12-CV-01228
115940.0029/5450589.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

26.     On July 27, 2011, after difficult and protracted negotiations, the parties entered into a memorandum of understanding (the "MOU"). The stated intent of the MOU was to form a joint venture to commercialize the API Blended Winglets Technology for the A320 family of aircraft, and to provide wing reinforcement work that would facilitate the engineering and design required to install blended winglets on existing Airbus aircraft for the retrofit market. The MOU also included an arbitration clause (different from that of the 2006 NDA).

27.     The MOU was the product of many discussions between Airbus and API business people, starting in 2006 and continuing through 2010. Airbus personnel involved in the negotiations included Mr. Tom Enders, Chief Executive Officer of Airbus, Mr. John Leahy, Chief Operating Officer of Airbus, Mr. Tom Williams, Executive Vice President of Programs; Wolfgang Engler, Vice President, Airbus, S.A.A; Mr. Charles Champion, Executive Vice President of Engineering; Mr. Oliver Furtak, General Counsel for Airbus and Ms. Valerie Manning, Vice-President, Head of Upgrade Services for Airbus (identified to API as the manager of the API relationship). During these discussions and pursuant to the 2006 NDA, API continued to disclose confidential and proprietary information to Airbus concerning the API Blended Winglet Technology and to teach Airbus how to incorporate that technology into commercial aircraft. Airbus had promised API—and API had reasonably believed—that Airbus would not misappropriate API's technology and that Airbus was genuinely interested in using the API Blended Winglet Technology on Airbus's A320 family of aircraft.

28.     Despite Airbus's continued representations for five years, Airbus breached its obligations under the various agreements. API learned that Airbus had filed an international patent application titled "*Non-Planar Wing Tip Device for Wings of Aircraft and Wing Comprising such a Wing Tip Device*" (hereinafter the "Airbus patent application"). Airbus did not disclose to API that it had filed this application until after it became public.

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE
RELIEF- 11
Case No2:12-CV-01228

115940.0029/5450589.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

29. Two of the inventors named in the Airbus patent application, Michael Karwin and Frank Theurich, were Airbus engineers that had been heavily involved in the engineering analysis of the API Blended Winglets Technology for use in Airbus's A320 aircraft. These engineers spent years working with API to learn API's proprietary and confidential technology, knowledge, and expertise. Mr. Karwin, whose title was Single Aisle Aircraft Director in Charge of Configurations and who had been introduced to API personnel as the program director in charge of the blended winglet project for Airbus, authored a 2007 Airbus report concerning feasibility and was a co-author of a report relating to the 2009 performance test of the API blended winglet on an Airbus A320 aircraft. Mr. Theurich had been introduced to API personnel as Airbus's computational fluid dynamics expert. Well before the filing of the Airbus patent application, both Karwin and Theurich were involved in the analysis of API's 2007 proposal, and both had access to API's confidential and proprietary engineering information that had been disclosed to Airbus under the protection of the 2006 NDA.

30. In the summer of 2011, and after repeated requests from API over several years, Airbus finally provided API with data and information (including engineering specifications and drawings) for Airbus's "Sharklet" blended winglet design. A technical analysis of Airbus's engineering documents and tolerances for the Sharklet demonstrated that Airbus had used and copied the API Blended Winglet Technology.

31. In September of 2011, API realized that Airbus did not plan to go through with any of the project work, or with the joint venture contemplated by the MOU. The nearly identical design of Airbus's Sharklet made it apparent that Airbus had never intended to fulfill any of its obligations under the 2006 NDA.

32. On April 9, 2012, an article in *The Korea Herald* reported that Korean Air, in conjunction with Airbus, delivered the first set of Sharklet winglets for Airbus A320 aircraft.

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE RELIEF- 12
Case No2:12-CV-01228
115940.0029/5450589.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

The article estimates that expected earnings on deliveries of Sharklet winglets and cargo doors by 2021 will be $1.3 billion. According to the article, the Sharklet winglets "help enhance the aircraft's payload range and take-off performance while raising fuel efficiency by some 3.5 percent and saving 700 tons of emissions per plane annually."

33. On information and belief, the Sharklet winglets supplied by Korean Airlines in conjunction with Airbus incorporate the API Blended Winglet Technology.

**FIRST CLAIM FOR RELIEF**

**BREACH OF NON-DISCLOSURE AGREEMENT**

34. API incorporates paragraphs 1 through 33 as if set forth fully herein.

35. Pursuant to the 2006 NDA, API disclosed confidential and proprietary information and data to Airbus concerning the API Blended Winglet Technology. API's proprietary and confidential information and data, knowledge, and expertise disclosed to Airbus included (1) engineering data and knowledge of how to implement and apply the API Blended Winglet Technology in various aircraft developed by API through its research and development, testing, and implementation of it, and (2) business and economic data concerning the value-added approach API has utilized to market and sell the API Blended Winglet Technology, including the savings that had been or would be achieved through the use of the API Blended Winglet Technology.

36. In direct breach of the NDA, Airbus willfully and maliciously misappropriated API's proprietary and confidential information and data, and used this information and data to design and develop its own winglet, which it has already introduced to the worldwide aviation marketplace as the "Sharklet."

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE RELIEF- 13
Case No2:12-CV-01228
115940.0029/5450589.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

37.   API is irreparably harmed by Airbus's willful and malicious breach of the NDA and is entitled to entry of an injunction enjoining Airbus from making any use of API's confidential and proprietary information and data during the pendency of this lawsuit and permanently thereafter.

**SECOND CLAIM FOR RELIEF**

**UNFAIR BUSINESS PRACTICES UNDER THE CONSUMER PROTECTION ACT**

38.   API incorporates paragraphs 1 through 37 as if set forth fully herein.

39.   Airbus committed an unfair and deceptive act when it contracted to take certain actions even when Airbus had no intention of doing so.  Among other deceptive promises, Airbus falsely agreed that it would (1) maintain and protect API's proprietary and confidential information and data, (2) not misappropriate API's proprietary and confidential information and data for Airbus's own use, and (3) review and evaluate API's proprietary and confidential information and data, but only for purposes of considering a joint venture with API to commercialize the API Blended Winglet Technology on the A320 family of aircraft. Airbus did not maintain its end of the bargain, but, instead, misappropriated API's confidential and proprietary information and data using and incorporating the API Blended Winglet Technology into the design of its competing Sharklet winglets.  Airbus then offered those winglets for sale in competition with API's blended winglets.  Airbus's actions were unfair and deceptive because Airbus never intended to keep the promises and covenants made by and to be kept by it in its agreements with API.  Airbus intended to use—and did use—API's proprietary and confidential information, data, knowledge, and expertise for its own commercial gain and benefit.

40.   Airbus also committed an unfair and deceptive act when it applied for an international patent application for its Sharklet winglet device, claiming to have invented the design when, in fact, Airbus developed the design by copying API's confidential and proprietary information and data.  Airbus misrepresented itself as the developer, designer, and

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE RELIEF- 14
Case No2:12-CV-01228
115940.0029/5450589.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

inventor of the Sharklet winglet to the examining patent officer and in its public application files.

41.     Airbus's unfair and deceptive acts occurred in trade or commerce because Airbus made promises during negotiations with API to induce API into disclosing the API Blended Winglet Technology.  Once obtained, Airbus used the API Blended Winglet Technology, and other API proprietary and confidential information to directly compete with API in domestic and international commerce.  These actions by Airbus affect citizens in Washington State.

42.     Airbus's unfair and deceptive acts also occurred in trade or commerce because Airbus fraudulently applied for an international patent application with the goal of commercializing its Sharklet winglet worldwide.

43.     Airbus's unfair and deceptive acts have the capacity to materially deceive a substantial portion of the public because consumers will view Airbus's patent and pay a premium for Airbus's Sharklet winglet believing, incorrectly, that the Sharklet is based on Airbus's research and development, when in fact the Sharklet is based on the API Blended Winglet Technology and other confidential and proprietary API information and data.

44.     Airbus's unfair and deceptive acts have injured API in its business and property because Airbus has unjustly misappropriated and retained the value of API's proprietary and confidential information and data, and because API spent a large sum of money to prepare and present the API Blended Winglet Technology to Airbus.

45.     There is a causal link between Airbus's unfair and deceptive acts and the injury API has suffered and will continue to suffer because API would not have disclosed its proprietary and confidential information, data, knowledge, and expertise to Airbus but for Airbus's promises and covenants.  Without learning the confidential and proprietary information from API, Airbus would not have had the basis and/or means for its Sharklet design.

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE
RELIEF- 15
Case No2:12-CV-01228

115940.0029/5450589.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

46. API has suffered and will continue to suffer irreparable injury in the absence of injunctive relief.

47. API is entitled to an injunction to stop Airbus's unfair and deceptive acts during the pendency of this lawsuit and permanently thereafter.

48. On information and belief, Airbus has sold, or has entered into commitments to sell Sharklets and/or Sharklet-equipped Airbus A320 aircraft.

49. API seeks injunctive relief on an expedited basis. To this end, a copy of this complaint will be served on the Attorney General of the State of Washington pursuant to RCW 19.86.095.

## PRAYER FOR RELIEF

WHEREFORE, Aviation Partners, Inc. requests the following relief:

1. That the Court enter an injunction either under the 2006 NDA and/or the Washington State CPA enjoining Airbus from advertising, promoting, marketing, importing, distributing, manufacturing, offering for sale, or selling its Sharklet winglet or any other product that incorporates or misappropriates API's confidential and proprietary information;

2. That the Court award API its costs and reasonable attorneys' fees as provided for by any relevant statute; and

3. That the Court award API such further relief as may be just and equitable under the circumstances.

//
//
//
//
//
//

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE RELIEF- 16
Case No2:12-CV-01228
115940.0029/5450589.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

DATED: July 31, 2012

        LANE POWELL PC

By  s/Brian G. Bodine
   Brian G. Bodine, WSBA #22414
   Steven H. Winters, WSBA #22393
   Tiffany H. Scott, WSBA #41740

**JOHNSTON LAWYERS, P.S.**
R. Bruce Johnston, WSBA #4646
2701 First Avenue, Suite 340
Seattle, Washington 98121
Tel: (206) 866-3230
bruce@brucejohnston.com

**ATTORNEYS FOR PLAINTIFF AVIATION PARTNERS, INC.**

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE RELIEF- 17
Case No 2:12-CV-01228

115940.0029/5450589.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

# CERTIFICATE OF SERVICE

I certify, under penalty of perjury and the laws of the State of Washington that on the date indicated below that I served a copy of the foregoing document on the following persons by regular U.S. mail:

Bruce Davidson Oakley
Hogan Lovells US LLP
Bank of America
700 Lousiana
Suite 4300
Houston, TX 77002
(713) 632-1420
Fax: (713) 583-7621
Email: bruce.oakley@hoganlovells.com

Thad T Dameris
Hogan Lovells US LLP
700 LOUISIANA
STE 4300
HOUSTON, TX 77002
713-632-1410
Fax: 713-583-6297
Email: thad.dameris@hoganlovells.com

Eric J. Lobenfeld
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
212-918-3000
Fax: 212-918-3100
Email: eric.lobenfeld@hoganlovells.com

Ira James Schaefer
Hogan Lovells US LLP
875 Third Ave
New York, NY 10022
212-918-3000
Fax: 212-918-3100
Email: ira.schaefer@hoganlovells.com
*ATTORNEY TO BE NOTICED*

I certify that I served a copy of the foregoing document on the following persons by messenger:

Washington State Office
 Of Attorney General
800 5th Ave, Suite 2000
Seattle, WA 98104-3188

I affirm under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

SIGNED July 31, 2012 at Seattle, Washington.

/s/ Debi Wollin
Debi Wollin

ANSWER AND COUNTERCLAIMS FOR INJUNCTIVE RELIEF- 18
Case No2:12-CV-01228

115940.0029/5450589.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107